UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA )
)
)
)
vs. )          DOCKET NO. 3:25-mj-320
)
)
)
WILLIAM STANLEY and )
HEATHER MORROW, )
)
)
Defendants. )


TRANSCRIPT OF ARRAIGNMENT AND MOTION HEARING
BEFORE THE HONORABLE DAVID KEESLER
UNITED STATES MAGISTRATE JUDGE
FEBRUARY 26, 2026


Deborah Cohen-Rojas, R.D.R., C.R.R., F.C.R.R.
Official Court Reporter
Deborah_CohenRojas@ncwd.uscourts.gov  704.350.7497
*Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.*

APPEARANCES:

On Behalf of the Government:

    Kenneth M. Smith
    United States Attorney's Office
    227 W. Trade Street, Suite No. 1700
    Charlotte, North Carolina  28202


On Behalf of Defendant Stanley:

    Claire J. Rauscher
    Womble Bond Dickinson (US) LLP
    301 South College Street, Suite 3500
    Charlotte, North Carolina  28202


On Behalf of Defendant Morrow:

    W. Rob Heroy
    301 S. McDowell Street, Suite 602
    Charlotte, North Carolina  28204

THE COURT: Okay. Let me go ahead and call the case, and we'll get rolling here. There are two named cases, William Stanley and Heather Morrow. The number in this case is 3:25-mj-320. Ms. Rauscher is here for Mr. Stanley, and Mr. Heroy is here for Ms. Morrow. Mr. Smith is here for the Government on this.

Thank you all for coming. Sorry you had to walk down here in the rain. It wasn't the weather I ordered, but thank you for being here. Sorry about the awkward set-up, but we'll deal with it.

So there are a couple of things to take up. I think this is mostly on for a status hearing of sorts, but there's some particular things that we need to address. And so why don't we dive in.

Basically there are three categories of things I'd like to address today. One is sort of a few odds and ends that we need to nail down. The next is what I would call case management and scheduling decisions. And then there are a couple of pending motions, and I want to make sure to address those and hear from the parties, issue an order if we can or, if we can't, certainly get what we need so that we can get something out to you promptly. Also, of course, I'm happy to take up anything that any of the lawyers or their clients want to address. So let me start with a few odds and ends here, if I may.

Listen, Mr. Smith, does the Due Process Protection Act apply to this case? Is it any less applicable than it would be in a felony matter?

MR. SMITH: I am treating this that Due Process Act applies, Your Honor.

THE COURT: Yeah.

Mr. Heroy, you agree with that?

MR. HEROY: Yes, sir.

THE COURT: And Ms. Rauscher?

MS. RAUSCHER: I do, Your Honor.

THE COURT: Okay. Well, what I thought might be appropriate, perhaps a little late, but that it would be good for us to go ahead and clarify and confirm that the Due Process Protections Act certainly does apply to this matter, as it would to any other felony case that might appear before us. And so with that in mind, let me go ahead and use the usual language here to notify the defendants regarding that issue.

Pursuant to the Due Process Protections Act, the Court does confirm the obligation of the Government to disclose to the defendant all exculpatory evidence in this case pursuant to Brady versus Maryland. The Court will order the Government to comply with that obligation, of course. Failure to do so in a timely manner could result in certain adverse consequences to the Government, including the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings,

or other sanctions.

So I think we did this more or less on a prior occasion in an order, Document 23 at the first paragraph on page 3, but I just didn't want there to be any misunderstanding about the applicability of the Due Process Protections Act.

So, Madam Clerk, if you'll make sure the docket sheet of the case reflects that we did that advisement today, I'd appreciate it.

THE CLERK: Yes, sir.

THE COURT: All right. I guess the next thing that I would like to talk about briefly is this, just in terms of how things are going to go from here forward.

Respectfully, let me just say I don't want to have to chase the parties to remind you that you need to file a response. Okay? So when a motion is filed, you need to file a timely response. And, you know, you guys work hard and it's a tough job, but I just want to make sure everybody complies with the rules so that we get what we need when we need it so we can issue an appropriate order. So please, all of you, if you will, comply with the rules and the local rules, file responses and replies in a timely manner. I'd appreciate that.

All right. Let's take up a couple of case management and scheduling things. I guess -- let me make an observation and get some reaction. What we got here is an information that alleges a Class A misdemeanor and three petty offenses.

Mr. Smith, am I right about that?

MR. SMITH: Yes, sir.

THE COURT: Okay. So apart from this being some challenging subject matter, this is sort of the land of misfit toys in terms of procedure, right? It's something we don't do a whole lot, so I just want to make sure we're all clear about how this ought to go.

Ms. Rauscher, does the defendant have, I guess, some choices that he could make regarding how he wants the case to go forward? In other words -- let me see if I can get this right. On a Class A misdemeanor, he could choose a bench trial before a district judge. He could choose to have a jury trial on a Class A misdemeanor. So stir that all around and there are a number of different possibilities here.

First of all, do you agree with my casual summary of that, and where do you think this is headed?

MS. RAUSCHER: Your Honor, I agree with your summary, and Mr. Stanley is requesting a jury trial in front of a district court judge.

THE COURT: Okay. And by the way, I know this goes without saying. I don't get my feelings hurt about these things. I certainly respect that request. Thank you.

Mr. Heroy, what about you, sir?

MR. HEROY: We request the same, Your Honor, a jury trial before a district court judge.

THE COURT: Let me get away -- a different question, but an interesting one.

There are three petty offenses and one Class A misdemeanor. The defendants have made an election that they would like a jury trial presided over by a district judge. I guess I'm wondering, can all that be done at one time or not? Petty offenses are sort of the exclusive province of magistrate judges, and Chief Judge Reidinger has issued a couple of opinions where he denied a motion to consolidate.

Mr. Smith, I'm just bouncing around here. We're all friends here, of course. Do you have any idea about that? I mean, efficiency would suggest that it all be -- it would be great to do it all at one time, but I don't know if we can.

MR. SMITH: Well, Your Honor, I think, given the choices of the defendants, the Government will make a motion for joinder, and we'll see what happens.

THE COURT: Okay. Ms. Rauscher?

MR. HEROY: We would ask that all the charges be consolidated into one for that person so --

THE COURT: Okay. Mr. Heroy?

MR. HEROY: We agree that that would seem the most expeditious way to handle this, efficient.

THE COURT: Okay. Appreciate that. Well, we'll look forward to your filing on that. I'll let the clerk know, of course, what's going on so that they can do -- they can make

some arrangements to have a district judge assigned and all of that kind of thing. So, yeah, let us have your motion on that when you get to it. All right?

The Speedy Trial Act applies to Class A misdemeanors, does it not, Mr. Smith?

MR. SMITH: Yes, sir.

THE COURT: So I think we may have previously granted a motion to continue employing the usual language regarding the Speedy Trial Act. In the magistrate judge job, we don't deal with that a whole lot. District judges are expert on that. But I wanted to speak with you on what your expectations are around that.

Is this likely to -- in my head I'm thinking there's likely to be pretrial motions practice of some sort that would be interesting. I don't know who's going to end up dealing with those, but I guess I'm trying to sneak up on the question of how long a track is this likely to take to get to the end?

MR. SMITH: Your Honor, the Court may recall, even to get to this point, speedy trial would have run 70 days, I think a few days ahead. And the Government has already, with defense consent, filed one continuous motion --

THE COURT: Right.

MR. SMITH: -- and I think we'll probably file another just for pretrial motions, jury instructions, and all the other things. So we'll file another one.

THE COURT: Okay. I don't want people to misunderstand. I certainly think everybody is entitled to a speedy resolution of their case, but I also want to make sure there's an appropriate amount of running room for all the lawyers to do the things they want to do.

Ms. Rauscher, you have a comment on that?

MS. RAUSCHER: My understanding is, Your Honor, the Speedy Trial Act would probably run starting today because I think that's when the continuance motion went to.

THE COURT: Is that right? I thought --

MR. SMITH: That is correct, Your Honor. I believe that is correct, Your Honor.

THE COURT: Okay. All right.

MS. RAUSCHER: It was going to run, I think, Monday, so -- usually it goes from the court date, so I think it would begin -- the clock would begin today. There's some issues that are outstanding right now, and I think that will make a decision as to whether we would agree to continuance or not.

THE COURT: Okay. Fair enough.

Mr. Heroy, you want to add anything to that?

MR. HEROY: I do anticipate there being pretrial motions, but I assume this will sort of fall sort of into a normal felony track once it gets a district court judge date, but I could be wrong.

THE COURT: Right. Okay.

Haley, did I misread when the Speedy Trial Act runs on this thing? When does it run?

(Discussion off the record.)

THE COURT: All right. Let's see what else we can do here.

Here's a question I should know the answer to, but I've always found a little confusing. Do the defendants need to be arraigned in a case like this?

Madam Clerk, do you know that answer?

THE CLERK: I do not.

THE COURT: Okay. Well, that makes two of us.

Mr. Smith.

MR. SMITH: Your Honor, I suggested, I think, on a prior motion that they -- just out of an abundance of caution, particularly given the Class A misdemeanor, that they should be arraigned.

THE COURT: Okay. Ms. Rauscher, do you have an opinion about that? Do you care?

MS. RAUSCHER: I don't really care, Your Honor, but I'm more than happy to waive a reading of the Bill of Information and enter a plea of not guilty.

THE COURT: Okay. Thank you.

Then, Madam Clerk, let's have our minutes reflect that as to Mr. Stanley. Ms. Rauscher is here for him. Through her, he waives a further formal reading of the charging document, he

pleads not guilty, and requests trial by jury. That will constitute arraignment in the case. We'll issue the usual orders as needed to Ms. Rauscher.

Also, we've already done the Due Process Protections Act advisement today, which would normally have been part of arraignment, so we won't repeat that part. Thank you very much for that.

Mr. Heroy, what about Ms. Morrow? Is she prepared to be arraigned?

MR. HEROY: We are, Your Honor, waive a formal reading, request a jury trial.

THE COURT: Very well.

Madam Clerk, as to Ms. Morrow, let's show that we proceeded to arraignment today. Mr. Heroy is here for her. Through him, she waives a formal reading of the charges, she pleads not guilty, and requests trial by jury. That will constitute arraignment. We'll issue the usual orders to Mr. Heroy. We've also advised her, earlier during this proceeding, about the Due Process Protections Act, so I won't repeat that at this time.

Okay. This may be drilling down a little too far, but pretrial motions. I guess we sort of nodded at this already.

Ms. Rauscher, are you anticipating motions to suppress or motions to dismiss or other exciting such things?

MS. RAUSCHER: I believe there may be motions, Your

Honor.

THE COURT: Okay. Fair enough.

Mr. Heroy, you agree with that?

MR. HEROY: I fully expect there will be motions. However, until the discovery and subpoena issues get resolved, I don't think we'd be prepared on those.

THE COURT: Understood.

Since you raised the discovery issue, Mr. Smith, can we talk generally about how that's going to go? What's going to happen with discovery here?

MR. SMITH: Your Honor, this is where discovery is. Let me step back a minute.

This is somewhat different in terms of just -- we'll just lay it out here -- is that we have -- my case agents in this case are -- the case agency is the FBI. The FBI is working with folks who are pretty much primarily immigration -- or, rather, administrative law officers. So we have different levels, which is somewhat unusual.

So having said that, we have requested, requested, and we have gotten everything that they say that they have. And so I think there's one or two reports that need to be done, but I anticipate, by Monday or Tuesday, everything that the Government has will be turned over.

Going back to the due process, we are -- contacted the relevant agencies. We have made a request for Giglio. If any

of that exists regarding the Government's officers, we should have that also by next week. So everything that they say that they have, we have gotten and we're going to turn it over.

THE COURT: Okay. Well, thank you. Your reputation for fair play gives me comfort, but we just need to make sure we're getting everybody the things they need and the things they are entitled to get. So let's all keep an eye on that.

All right. Motions. We have a couple of motions on, thought we might spend a little time on that if that's all right with everybody. There's a -- Defendant Morrow's motion -- well, a Rule 41(g) motion to return a vehicle key and rally items. That's Document No. 21. Also, Ms. Morrow's motion for order allowing the defense to issue Rule 17 subpoenas.

I'm happy to hear from everybody on those motions. I'm not sure exactly what we're going to get done today on those. Maybe we can get them resolved, maybe we can't, but we'll certainly get them resolved promptly.

Mr. Heroy, sounds like maybe those are both your teams' motions. Am I right about that?

MR. HEROY: Yes, sir.

THE COURT: Okay. You want to be heard on the motion to return property?

MR. HEROY: Not any further, Your Honor.

THE COURT: Okay. Well, Mr. Smith, I -- these are always head-scratchers to me. I -- I want to do right by

everybody in the case, and I prefer it when we don't have to fight over stuff like this, but I understand that, from time to time, there will be motions practice over things like this.

Can you tell me where we are on the things that they requested? Ms. Morrow, the key, the other items that were mentioned, the rally items that they refer to as.

MR. SMITH: Yes, sir. Your Honor, this is -- again, this is unusual. That's why I mentioned the unusual posture of how this case happened, meaning we have -- I -- you know, I have -- I have, the agents have, asked where is this stuff? I mean, seriously, it was -- had it at one point, no longer exists. Folks have checked, they've looked. Right now they're not in the possession of ICRO, which is the agency that collected it that day.

And I think the Court can see the email exchange between Ms. Morrow's co-counsel with one of the supervisors over there. They just don't have it. And I don't know where it happened, I don't know what happened with it, but it just -- it no longer exists. I think there was even a reference in the email exchange that perhaps it was sent to Georgia for some reason. I don't know.

I just -- you know, we're in an unusual position of collecting evidence along the chain that is somewhat unusual than what we normally do, but the bottom line is, as of December, they no longer possessed it.

THE COURT: Okay.

MR. SMITH: And so I would say that, to the extent there is a remedy that can be offered, number one, the Government does apologize to Ms. Morrow for those lost items that we no longer possess.

By way of -- I think she may have -- I think she mentioned perhaps some remedies as far as to the extent -- I think co-counsel mentioned that he views these items as exculpatory. The Government has a different position about that, and we'll deal with that at trial.

But nevertheless, to the extent she wants to introduce photos, if she wants stipulations that these items existed, stipulations that they were present from November 16th and no longer there, the Government is willing to accommodate in any way to make this reasonable in light of what has happened.

THE COURT: Mr. Heroy, let me ask you a question about this. I realize it was your colleague who filed the latest pleading on this, which is Document 33.

Am I reading this correctly? It -- there seems to be an exchange here between -- and I'm -- is it Mr. DeJanon? How do you say his last name?

MR. HEROY: "Day-a-non."

THE COURT: "Day-a-non." That sounds a lot better.

There's email traffic between him and an agent, I guess -- I don't want to miscall the agency, but not the FBI, the

immigration folks -- which seems to say I have found a bullhorn, two bowls, a spoon, and what appears to be a shower ring, were unable to locate a key or any paper.

So I guess what I'm trying to get at here is, were they found or not? Mr. Smith, were they found and then lost? What happened?

MR. SMITH: Your Honor --

THE COURT: In other words, what's the -- what's the place of the email traffic in the discussion here?

MR. SMITH: The place -- these -- Your Honor, the emails happened, I guess, a few weeks after the event on November 16th. And as the Court sees -- you know, I was not a part of the exchange with the FBI agents at this point. It was between counsel and Mr. Kemerling, who was a supervisor over at ICRO.

(Reporter seeks clarification.)

MR. SMITH: His name is Kemerling, Steven.

THE COURT: Spell that, would you.

MR. SMITH: S-t-e-v-e-n. Kemerling is K-e-m-e-r-l-i-n-g.

And so it does appear, Your Honor, that Ms. Morrow is correct that those items were there November 16th. And somehow or another, between -- Your Honor, this is just a difficult way to explain, but something happened with those items. They no longer exist. The agency no longer has them.

THE COURT: Okay. Well, I don't want to make this harder than it is, but were these -- look, I've known all of you a long time, and you're terrific at your jobs. Are these things that have evidentiary relevance? Would these be things that would be presented at the trial if we had them? Would you present them in your case-in-chief if you had that stuff?

MR. SMITH: Yes.

THE COURT: Okay. So, Mr. Heroy, folks in the gallery may be thinking, what in the world? But, look, is it -- what's the relief you want? Is it for me to say, well, gosh, if you find them, please produce them immediately?

MR. HEROY: And that's -- that's a good question for us because it's a little bit of a, you know, what's going on behind the curtain over there with ICE. And I don't know if there's much other remedy that we could ask for aside from a potential discovery hearing, where the officer would testify as to what's going on with everything.

THE COURT: Okay. But to be fair, that's not where we are right now, right? Right now we're just -- we're on the motion itself.

MR. HEROY: Yes, sir.

THE COURT: Okay. All right. Anybody want to say anything else about that?

MR. SMITH: No. No, Your Honor.

THE COURT: Okay. Well, at the risk of seeming naive,

keep looking, will you?

MR. SMITH: Yes, sir.

THE COURT: Okay. Thank you.

All right. What about the subpoena issue? You want to speak to that, Mr. Heroy?

MR. HEROY: I would, Your Honor.

You know, again, it's a little bit of a behind-the-curtain type thing here, where it sounded like maybe there was going to be something, and then it turned out that maybe ICE does not have any text-message chain like that. I don't know sort of the nature of their response, if they just made the decision this isn't Brady, so we're not going to turn it over to the prosecution team.

And I certainly think the prosecution team is doing a good job here and doing what they can, but I think that they may be put in a difficult position, and maybe there's something fishy in Denmark, but -- so that's the reason I filed this motion for the subpoenas.

I've reviewed the Government's response that came in two days ago. In response to that, I spoke to the US Marshal's Office. They indicated that they were requested to serve the subpoenas. They would, and I think that would alleviate the problem with, you know, the Government having its FBI agents serve those or anything like that. I didn't gather from the Government's motion that they objected to the issuance of the

subpoenas, just their agents being asked to serve them.

THE COURT: Okay. And this is a bit prying, but -- I don't have any objection to that, frankly. I mean, I'm happy to direct that that be done. Well, here's where I'm going. Are you guys representing these clients pro bono? Here's what I'm getting at.

MR. HEROY: I get it.

THE COURT: Is the Government expense put to that purpose and the -- kind of the steps that you go through to get to that place? You know --

MR. HEROY: I'll say we are.

THE COURT: Sure.

MR. HEROY: And it's -- if we do need to have her fill out the CJA affidavit, that's something we discussed in advance as far as being able to qualify for that, and I would think she would.

THE COURT: I trust you.

Ms. Rauscher, do you want to comment on that?

MR. HEROY: Your Honor, we're in the same posture. We're doing this pro bono. If it becomes necessary, we'll provide the financial affidavit, but right now I think we're okay.

THE COURT: Okay. Well, I'm not inclined to ask you to do more than you're doing already, frankly, so we're just going to take care of that motion for you.

MR. HEROY: Thank you so much, Your Honor.

THE COURT: And I respect the Government's position. I think -- look, it gets a little tricky when the Government's team is sort of involved in making sure the stuff gets served, so that can lead to mischief of various types. I mean, it just can get awkward. So I like this idea of having the marshals serve the subpoenas.

Is that okay with you, Mr. Smith?

MR. SMITH: Yes, Your Honor.

THE COURT: Okay. All right. Well, let me look at my cheat sheet here, see if I can help you all with anything else.

Haley, anything else that you can think of?

(Discussion held off the record.)

THE COURT: Okay. Let's talk for a second here, then, about what needs to happen.

We will inform the Clerk's Office that the defendants, through counsel, have requested a jury trial presided over by a district judge, and we'll let the clerk figure out how to put that in place, and so there's that.

If there's future motions practice, as I suspect there will be, we'll look forward to getting those papers and timely responses to them. And if my chambers is involved, we'll work hard on those and prepare appropriate M&Rs if requested for the district judge, or if the district judge wishes to do those him or herself, then they can certainly do that.

Discovery. I want to encourage the Government to do its very best to make sure the defendants have constitutional access to the information they're due to get in a timely manner. And I assume that, as some of this machinery starts to run, then some of these issues related to speedy trial and other issues like that will kind of get resolved in the way that they do in a felony case.

So I think that may be everything for today, but let me just ask, anybody else have anything? Ms. Rauscher, you want to talk about anything else?

MR. HEROY: No, Your Honor.

THE COURT: Okay. Mr. Heroy?

MR. HEROY: I don't, Your Honor. I just wanted to clarify for housekeeping. What the Court is looking for both defendants to file is a request that their charges be consolidated or joined?

THE COURT: That strikes me as the sensible thing, is to -- is to -- yeah. I think that would be good.

MS. RAUSCHER: Or if the Government's going to file one, we could -- I would say I'm not opposed.

THE COURT: Oh, okay.

MR. SMITH: Okay, then.

MR. HEROY: However we want to do it, I'm good. I just want to make sure. I don't want to leave here and not be doing something I should be doing.

THE COURT: Well, Mr. Smith, let me give you something to think about, and you can push back if you want. You could do a short notice saying that we had this hearing, and all parties were represented, and the defendants, through counsel, have requested that all matters be consolidated for a trial before a jury and a district judge. Do you mind doing that?

MR. SMITH: Yes, sir. I'll wait for, I guess, Madam Clerk or ECF, see who's appointed, and then I'll file it with that district court judge.

THE COURT: Okay. Great. Thank you for that idea.

By the way, I hope this goes without saying, but we appreciate Ms. Rauscher and Mr. Heroy representing these folks.

By the way, on that topic, Ms. Rauscher, is Mr. Cooney going to be working with you on this?

MR. HEROY: He is, Your Honor.

THE COURT: Working for you, I hope.

MS. RAUSCHER: Probably.

THE COURT: At your direction, I guess is what I meant.

And Mr. DeJanon will be working with you, Mr. Heroy?

MR. HEROY: He will, maybe in the same boat there.

Could I approach and maybe steal a Kleenex from up there if there is one available?

THE COURT: Of course. Yes, absolutely.

MR. HEROY: Thank you so much.

THE COURT: All right. I appreciate folks coming on a grim day outside to do this. I think it's important to keep things moving apace, and we made some important progress today.

I think so, Haley, unless you nothing know of anything else I should do.

Mr. Smith, do you have anything further?

MR. SMITH: Nothing from the Government at this time, Your Honor.

THE COURT: Madam Clerk, what about you?

THE CLERK: No, sir.

THE COURT: Then thank you all very much. Good luck with the case. We'll look forward to working with you if called upon. Otherwise, wish you the best. Okay? Thanks.

(End of proceedings.)

C E R T I F I C A T E

I, DEBORAH COHEN-ROJAS, Federal Official Court Reporter for the United States District Court for the Western District of North Carolina, a Registered Diplomate Reporter, Certified Realtime Reporter, and Federal Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the foregoing proceedings contained herein on the aforementioned subject on the date herein set forth, and that the foregoing pages constitute a full, true and correct transcript.

Dated this 18th day of March, 2026.

_____

DEBORAH COHEN-ROJAS
RDR, CRR, FCRR
Federal Official Court Reporter