**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No: 3:25-mj-00320-MEO-DCK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM STANLEY and HEATHER MORROW,<br><br>Defendants. | **DEFENDANT'S OMNIBUS RESPONSE TO UNITED STATES' MOTIONS IN LIMINE** |

On July 29, 2026, the United States filed two Motions in Limine. Each Motion, however, deals with multiple issues. In total, the United States in these two motions seeks to exclude or limit 8 arguments or types of evidence in this prosecution. Because the United States uses the same Statement of Facts and the same Standard of Review in both Motions and each of the issues requires separate analysis, Mr. Stanley will respond in a single, omnibus, response.

**Response to the Government's "Statement of Facts"**

In Motions that are aimed at preventing the admission of what the Government views as improper evidence, the United States uses several pages setting forth its version of the facts in this matter and going so far as to state "the facts are straightforward." They are not. The Government's version of the facts is premised solely on the anticipated testimony of an agent or agents from the Removal and Enforcement arm of the Department of Homeland Security. This is so because the Department of Homeland Security, after being advised by the FBI to preserve a surveillance tape of the incident, failed to do so. That video surveillance, rather than the testimony of a Removal Agent, would have been the best evidence of what actually occurred.

But there is another videotape, one taken by a bystander and which, as a result of a perfunctory investigation by the Government, was never collected.[1] It shows a very different set of facts. As one example, the Government asserts that the Removal Agent drove a vehicle, stopped when Mr. Stanley stepped in front of it, and, when stopped, Mr. Stanley allegedly ran up and hit the window with his fist.[2] Only then, according to the Government did the Removal Agent "exit" his car and "advise" Mr. Stanley that he was under arrest. The bystander video, however, shows masked and armed agents on a private roadway leading up to the DHS building and parking lot (roughly 100 yards from the building entrance). A single agent in plain clothes and an unmarked car (with a blue light in the side window) pulls up the driveway and then stops in front of Mr. Stanley. As other protestors verbally attempt to engage with the Removal Agents, the plainclothes agent rushes out of the car and screams: "Come here you m----ther-f---er." He grabs Mr. Stanley by the arm, spins him around and then is joined by another agent in pinning Mr. Stanley s against a parked car.[3] There is nothing in the videotape to support the Government's statement that Mr. Stanley was "advised" by the agent that he was under arrest.

The Government has charged that Mr. Stanley, using actual force or the threat of physical force, assaulted, impeded, obstructed, intimidated, or forcibly resisted a federal agent who was in the course of his official duties. But the videotape will show that the only force used was by the

---

[1] For example, the Removal Agents at the scene failed to gather the names and contact information for witnesses to these "crimes," depriving the Defendant of the opportunity to call these witnesses and any evidence that they may have possessed - - like the videotape.

[2] The Government is expected to assert that a "palm print" on the car was left by Mr. Stanley. However, the Government never took or sought Mr. Stanley's palm print and thus the FBI was unable to engage in a comparison between the latent print with his palm print. The FBI further made no effort to eliminate the Removal Agent (who was in control of the vehicle and placed his hands and palms on the car) as the person who left the palm print.

[3] Other agents then tackled Ms. Morrow and took her to the asphalt on the private driveway.

Removal Agents. It will apparently be the Government's position that, by standing in front of a vehicle, Mr. Stanley assaulted or intimidated, or forcibly obstructed the masked and armed agent driving it, and that when Mr. Stanley spun around while attempting to avoid being tackled to the pavement after being grabbed by the agent, he forcibly resisted.

The Defendant does not suggest that the Government intentionally is distorting the facts in its Motions. Rather, the Government, having failed to preserve the best evidence of what happened, has now chosen to rely on a version of facts presented by a witness which are contradicted by available video evidence. And while this dispute about the facts (and their meaning) are not dispositive of the Government's Motions, it illustrates that many of Government's Motions (like its assertion that the facts of this matter are "straightforward") sweep too broadly.

**Response to the United States' First MIL (ECF #51)**

The first Motion in Limine ("MIL #1") seeks to limit or exclude matters concerning (1) the dismissal of a felony charge against Ms. Morrow for this conduct; (2) eliciting "self-serving" hearsay (presumably on cross-examination); (3) attempting to present character evidence that does not comply with Fed.R.Evid. Rule 405; and (4) cross-examining for any purpose witnesses with reports that they did not "sign" or "adopt."

- <u>Dismissal of Felony Charges against Ms. Morrow.</u>
    - Mr. Stanley does not intend to argue that the dismissal of the felony count is proof of his or Ms. Morrow's innocence. Nor will he argue that the dismissal reflects the views of the prosecutors about the integrity of the evidence.

- But the Government's Motion sweeps broadly and appears to be an effort to exclude from the Jury's consideration the historical fact is that Ms. Morrow was initially charged with a felony based upon a version of facts that did not occur. In addition, internal reports generated by the Government characterize these alleged crimes as "assaulting, killing, or attempting to kill Fed officer," (USA_00000294), which, in combination with the initial charge, demonstrates that since the beginning of this matter the Removal Agent (or agents) exaggerated and misrepresented the true facts. Consequently, while the dismissal standing alone will not be used by Mr. Stanley, the factual claims that led to the initial felony charge and which are reflected in the Government's own investigative documents are relevant to the credibility of the version of events that the Government now wants to present through its witness(es).

- <u>Eliciting "Self-Serving" Hearsay Statements by the Defendant.</u>
  - It is not clear what "self-serving" hearsay statements by Mr. Stanley (or Ms. Morrow) could be elicited from the agents, and the Government identifies no such statements. Presumably, having interviewed the Removal Agents, the Government could alert the Court to the statements about which it is concerned. But, as set forth in the Defendants' Motion in Limine, both Defendants refused to make any statements after being advised of their rights under *Miranda*. Mr. Stanley cannot respond to the exclusion of proposed statements that the Government has not identified (particularly when he made no statements while in custody). The Court should thus defer

a ruling on this Motion, or at least the direct the Government to identify the alleged "self-serving" statements it seeks to exclude. And there are several issues that the Court should consider at the time at which such statements are offered. These are:

- Hearsay statements of a Defendant can be inquired if the "door is opened" by the Government on direct examination. For example, if there is testimony concerning a Defendant's statements or testimony concerning what a Defendant did or did not say before being advised of his rights, then under either Fed.R.Evid. Rule 106 (permitting such statements under the "rule of completeness") or as a matter of legitimate impeachment, a Defendant's statements become fair game on cross-examination.
- The videotape of the incident obtained by the Defendants (and which constitutes the best evidence of what actually occurred) will contain a number of "statements" made by protesters. It is not clear that Mr. Stanley made any of the statements that can be heard. None are offered for their truth and the Defendant does not object to a cautionary instruction that these statements are not evidence and may not be considered by the Jury. These statements, which consist of unidentified protestors telling the agents that they are acting illegally, are simply part of the videotape and provide a context for the actions that took place (and in particular the actions of the agents of the Government).

- Character Evidence that Does Not Meet the Requirements of Rule 405. The Defendant does not intend to offer such evidence unless it meets these requirements.
- Cross-Examination of One Agent with the Report of Another Agent. The Government objects to the cross-examination of an agent with a report written by another agent, unless the testifying agent "signed" or "adopted" the report, arguing that unless the testifying agent has signed or adopted the report, it cannot be introduced or referred to in any form. The Government does not refer to or provide the statement(s) about which it is concerned, nor identify the testifying agent(s). In so doing, the Government conflates two different uses for such evidence: the use of such reports as substantive evidence and their use for purposes of credibility (a non-substantive evidence use). When used as substantive evidence, such a report is subject to the rules on hearsay; when used for a non-substantive purpose, the hearsay rules do not apply. In addition, there are circumstances under which such a report could constitute the admission of a party-opponent, in which case it is not hearsay at all.

  Because the Government does not identify the report(s) of concern and does not present a context for its improper use, the Defendant suggests that the Court defer ruling on this Motion until the circumstances arise. At such time, there are a number of potential issues. The Defendant agrees that under Fed.R.Evid. Rule 613, while a witness' prior inconsistent statement can be used for impeachment purposes, as a general proposition, the use of another witness' statement on cross-examination against a testifying witness would be considered hearsay, as the impeachment value

of such a statement rests on its truth. *See Bemix v. Edwards,* 45 F.3d 1369, 1372 (9th Circ. 1995); *U.S. v. Bauzo-Santiago,* 49 F. Supp.3d 155, 157-58 (D. Puerto Rico, 2014). Under those circumstances, the statement must meet a valid hearsay exception. Such exceptions include:

- *Public Records.* Under Fed.R.Evid Rule 803(8), if the record or statement is one of a public office that sets out a matter within the office's activities and which were reported under a legal duty, then the report can be admitted when used against the Government in a criminal case and would be proper cross-examination.[4]
- *Rule of Completeness.* Under Fed.R.Evid. 106, the "rule of completeness," to the extent that part of a report containing statements are admitted, the Court has the discretion to admit the remainder of the statement "over a hearsay objection" when "in fairness" the remainder "ought to be considered at the same time." Consequently, should the Government use part, but not all, of another agent's report, the remainder of the report can be admitted.
- *Review of and Reliance on Report.* If the witness reviewed and relied upon the non-testifying witness report to reach conclusions or take actions, then the basis for those actions and conclusions can be challenged with the report.

[4] The Courts have generally held that such records, if they do not qualify as public records, cannot be used under Rule 803(6) as records of a regularly recorded activity. *See, e.g., U.S. Pena-Gutierrez,* 222 F.3d 1080, 1086-87 (9th Circ. 2000).

- *Referring to or Mischaracterizing Report.* If the testifying agent refers to or mischaracterizes the non-testifying witness' report, then the report may be used for impeachment purposes.
- *Adoptive Admission and Admission of a Party-Opponent.* Finally, if the testifying witness relied upon the report to take an official action on behalf of the Government, the non-testifying witness' report would be both an adoptive admission by the testifying agent and an admission of a party-opponent by the Government. For example, if the testifying witness used the non-testifying witness' report as the basis of a search warrant, or to seek an arrest warrant, or to charge the Defendant, then it should be considered both an adopted statement of the testifying witness and an admission of the United States because it was used to take an official action on behalf of the United States.

**United States' Second MIL (ECF #52)**

The second Motion in Limine ("MIL #2") seeks to limit or exclude matters or argument concerning (1) vindictive or selective prosecution, (2) references to punishment or collateral consequences, (3) presenting evidence or argument about policy or political considerations concerning the Administration's immigration policies or enforcement efforts, and (4) argument or evidence that the Defendant's speech and/or conduct was First Amendment protected activity. The Government seeks these exclusions under the general rubric that these matters would involve "jury nullification" or would "mischaracterize the issues" for the jury.

Mr. Stanley does not intend on asking the Jury to ignore the law or nullify it. To the contrary, he intends to argue that the Jury must hold the Government and its agents to the law, and

that if the Jury does so then he will be acquitted. Put simply, Mr. Stanley will rely on the law; he will not be asking the Jury to disregard it. Nor will he be arguing about the collateral effects of being convicted of a federal crime, just as he assumes that the Government will not attempt to minimize what a criminal conviction represents.

As a practical matter, the Government's motion is directed at having this Court, somehow, evict the proverbial "elephant in the room" from the courtroom. The reality of this case is that it began as a protest against the Government's immigration removal policies and tactics. The entire nation has witnessed those policies and its impacts on communities. And many of the actions that have taken place across the country - - the absence of body cameras from these federal agents, the absence of dashboard cameras from these vehicles, the use of unmarked vehicles, the masking of federal agents, and the aggressive tactics used by these federal agents - - are part and parcel of the events of this case. No motion in limine or cautionary instruction is capable of erasing what has occurred across the country (whether for better or for worse for the Defendant). So pretending that this national narrative is not part of this case, or that the Court can somehow exclude it from the case, is fruitless.

Notably, the Government has specifically asked this Court to find that speech protesting the policies of this Administration is not "speech" that is a protected First Amendment activity. MIL #2 at p. 1. It cites no case for this remarkable assertion. To the contrary, speech against Government policies lies at the core of the First Amendment. *See, e.g., Snyder v. Phelps,* 562 U.S. 443, 453 (2011) ("Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' [ ] or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"; *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* 472 U.S. 749, 758-59 (1985)

(speech regarding "matters of public concern . . . is at the heart of the First Amendment."). Moreover the "arguably 'inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.'" *Snyder,* 562 at 453. Rather, in the absence of valid time, place, and manner restrictions, there is an absolute right of "protesters to assemble and speak out against the government." *Occupy Columbia v. Haley,* 738 F.3d 107, 125 (4th Cir. 2013) (holding that right to protest on the grounds of the State House "has been clearly established since *Edwards v. South Carolina.").*

To date, the Defendants have not been charged for what they said, but for what Removal Agents claim they did. Mr. Stanley will not argue or suggest that forcibly assaulting or intimidating federal agents is a protected First Amendment activity; rather, he will argue that he did not do so and that the Government has not proven its case beyond a reasonable doubt on more than one element of these crimes. But neither should the Government be permitted to suggest that speaking, by itself and without conduct, is a crime. If the Government is indeed suggesting this in its MIL #2, the Defendant asks for notice so that it may raise as an affirmative defense his right to speak out against the policies of the Government.

This 5th day of August, 2026.

*/s/ James P. Cooney III*
James P. Cooney III (NC Bar No. 12140)
Claire J. Rauscher (NC Bar No. 21500)
WOMBLE BOND DICKINSON (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4980
Telephone: (704) 331-4961
Email: Jim.Cooney@wbd-us.com
Email: Claire.Rauscher@wbd-us.com
*Attorneys for Defendant William Stanley*

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing **DEFENDANT'S OMNIBUS RESPONSE TO UNITED STATES' MOTIONS IN LIMINE** on all counsel via the ECF system.

This the 5th day of August, 2026.

/s/ *James P. Cooney III*
James P. Cooney III